[23 NE3d 997, 998 NYS2d 729]

LORRAINE BORDEN, on Behalf of Herself and All Others Similarly Situated, Respondent, v 400 EAST 55TH STREET ASSOCIATES, L.P., Appellant.

YANELLA GUDZ, on Behalf of Herself and All Others Similarly Situated, Respondent, v JEMROCK REALTY COMPANY, LLC, Appellant.

ELISA DOWNING et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, v FIRST LENOX TERRACE ASSOCIATES et al., Appellants.

Argued October 14, 2014; decided November 24, 2014

## POINTS OF COUNSEL

*Rosenberg & Estis, P.C.*, New York City (*Jeffrey Turkel* and *Dani Schwartz* of counsel), for appellant in the first above-entitled action. I. Respondent cannot evade CPLR 901 (b) by purporting to waive treble damages under Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (a). (*Cox v Microsoft Corp.*, 8 AD3d 39; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11; *Asher v Abbott Labs.*, 290 AD2d 208; *Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 103; *Wolfisch v Mailman*, 182 AD2d 533; *Matter of 508 Realty Assoc., LLC v New York State Div. of Hous. & Community Renewal*, 61 AD3d 753; *Matter of Nagobich v New York State Div. of Hous. & Community Renewal*, 200 AD2d 388.) II. A tenant's attempt to waive a benefit granted under the Rent Stabilization Law of 1969 for any purpose, including evasion of CPLR 901 (b), is void as against public policy and barred by Rent Stabilization Code (9 NYCRR) § 2520.13. (*Estro Chem. Co. v Falk*, 303 NY 83; *In re Berry Estates, Inc.*, 812 F2d 67; *Sylvester v Bernstein*, 283 App Div 333, 307 NY 778; *Jazilek v Abart Holdings LLC*, 10 NY3d 943; *Riverside Syndicate, Inc. v Munroe*, 10 NY3d 18; *Matter of Badem Bldgs. v Abrams*, 70 NY2d 45; *Roberts v Tishman Speyer Props., L.P.*, 62 AD3d 71, 13 NY3d 270; *Drucker v Mauro*, 30 AD3d 37, 7 NY3d 844; *390 W. End Assoc. v Harel*, 298 AD2d 11; *Cvetichanin v Trapezoid Land Co.*, 180 AD2d 503.) III. Even if respondent is allowed to waive a benefit granted by the Rent Stabilization Law of 1969, class certification should have been denied because respondent is not an adequate or typical representative of the class. (*City of Rochester v Chiarella*, 65 NY2d 92; *Small v Lorillard Tobacco Co.*, 94 NY2d 43; *Russo & Dubin v Allied Maintenance Corp.*, 95 Misc 2d 344; *Burns v Volkswagen of Am.*, 118 Misc 2d 289; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129.) IV. Allowing a plaintiff to waive statutory penalty damages to evade CPLR 901 (b), under any circumstance or statute, violates CPLR 901 (b)

and its legislative intent. (*Burns v Volkswagen of Am.*, 118 Misc 2d 289; *Sperry v Crompton Corp.*, 8 NY3d 204; *72A Realty Assoc. v Lucas*, 101 AD3d 401.) V. Respondent cannot meet the required commonality and superiority elements. (*Gawez v Inter-Connection Elec., Inc.*, 9 Misc 3d 1107[A], 2005 NY Slip Op 51443[U]; *Daniel v New York State Div. of Hous. & Community Renewal*, 179 Misc 2d 452; *Osarczuk v Associated Univs., Inc.*, 82 AD3d 853; *Rosenfeld v Robins Co.*, 63 AD2d 11; *CLC/CFI Liquidating Trust v Bloomingdale's, Inc.*, 50 AD3d 446.)

*Bernstein Liebhard LLP*, New York City (*Christian Siebott, Gabriel G. Galletti* and *Heather V. Lynch* of counsel), for respondent in the first above-entitled action. I. CPLR 901 (b) does not bar this case from being maintained as a class action under Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516. (*Weinberg v Hertz Corp.*, 116 AD2d 1; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 77 NY2d 801; *Cox v Microsoft Corp.*, 8 AD3d 39; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947; *Life & Casualty Ins. Co. of Tenn. v McCray*, 291 US 566; *Sperry v Crompton Corp.*, 8 NY3d 204; *Sicolo v Prudential Sav. Bank of Brooklyn, N.Y.*, 5 NY2d 254.) II. New York public policy and Rent Stabilization Code (9 NYCRR) § 2520.13 do not prevent respondent from waiving penalty damages. (*Estro Chem. Co. v Falk*, 303 NY 83; *Matter of Matinzi v Joy*, 60 NY2d 835; *Georgia Props., Inc. v Dalsimer*, 39 AD3d 332; *Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316; *Jazilek v Abart Holdings LLC*, 10 NY3d 943; *Riverside Syndicate, Inc. v Munroe*, 10 NY3d 18; *Matter of 85 E. Parkway Corp. v New York State Div. of Hous. & Community Renewal*, 297 AD2d 675; *Krebs v Canyon Club, Inc.*, 22 Misc 3d 1125[A], 2009 NY Slip Op 50291[U]; *People ex rel. McLaughlin v Board of Police Commrs. of City of Yonkers*, 174 NY 450.) III. This action satisfies CPLR 901 (a)'s five requirements for class certification. (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481; *City of New York v Maul*, 14 NY3d 499; *Friar v Vanguard Holding Corp.*, 78 AD2d 83; *Daniel v New York State Div. of Hous. & Community Renewal*, 179 Misc 2d 452; *Osarczuk v Associated Univs., Inc.*, 82 AD3d 853; *Roberts v Tishman Speyer Props., L.P.*, 89 AD3d 444; *Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14; *Ackerman v Price Waterhouse*, 252 AD2d 179.)

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Magda L. Cruz, Sherwin Belkin* and *Steven Kirkpatrick* of counsel), for appellant in the second above-entitled action. I. Plaintiff is barred from class certification under CPLR 901 (b) and cannot waive statutory penalties. (*Sperry v Crompton Corp.*, 8 NY3d 204; *Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 103; *Matter of Myeong Cheol Kim v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 249 AD2d 478; *Matter of 10th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal*, 34 Misc 3d 1240[A], 2012 NY Slip Op 50484[U]; *212 W. 22 Realty v Fogarty*, 1 Misc 3d 905[A], 2003 NY Slip Op 51517[U]; *Asher v Abbott Labs.*, 290 AD2d 208; *Rudgayzer & Gratt v LRS Communications, Inc.*, 6 Misc 3d 20, 22 AD3d 148; *Klapak v Pappas*, 79 AD2d 602; *Matter of Empire Blue Cross & Blue Shield Customer Litig.*, 164 Misc 2d 350; *Mohassel v Fenwick*, 5 NY3d 44.) II. Plaintiff failed to establish her entitlement to class certification under CPLR 901 (b). (*Ackerman v Price Waterhouse*, 252 AD2d 179; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129; *Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420; *Cardona v Maramont Corp.*, 2009 NY Slip Op 32695[U]; *Consolidated Rail Corp. v Town of Hyde Park*, 47 F3d 473; *Bloom v Cunard Line*, 76 AD2d 237; *Alix v Wal-Mart Stores, Inc.*, 16 Misc 3d 844, 57 AD3d 1044; *Small v Lorillard Tobacco Co.*, 94 NY2d 43; *Gordon v Ford Motor Co.*, 260 AD2d 164; *Gaynor v Rockefeller*, 15 NY2d 120.) III. Plaintiff's motion for class certification should have been denied on procedural grounds. (*Rebibo v Axton Owners, Inc.*, 2012 NY Slip Op 30109[U]; *Guzman v Mike's Pipe Yard*, 35 AD3d 266.)

*Bernstein Liebhard LLP*, New York City (*Christian Siebott, Gabriel G. Galletti* and *Heather V. Lynch* of counsel), for respondent in the second above-entitled action. I. CPLR 901 (b) does not bar this case from being maintained as a class action under Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516. (*Weinberg v Hertz Corp.*, 116 AD2d 1, 69 NY2d 979; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 77 NY2d 801; *Cox v Microsoft Corp.*, 8 AD3d 39; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947; *Klapak v Pappas*, 79 AD2d 602; *Russo & Dubin v Allied Maintenance Corp.*, 95 Misc 2d 344; *Hauptman v Helena Rubinstein, Inc.*, 114 Misc 2d 935; *Life & Casualty Ins. Co. of Tenn. v McCray*, 291 US 566.) II. New York public policy and Rent Stabilization Code (9 NYCRR) § 2520.13 do not prevent respondent from waiving penalty damages. (*Drucker v Mauro*, 30 AD3d 37, 7 NY3d 844; *390 W. End*

*Assoc. v Harel*, 298 AD2d 11; *Estro Chem. Co. v Falk*, 303 NY 83; *Matter of Matinzi v Joy*, 60 NY2d 835; *Georgia Props., Inc. v Dalsimer*, 39 AD3d 332; *Manocherian v Lenox Hill Hosp.*, 84 NY2d 385; *Riverside Syndicate, Inc. v Munroe*, 10 NY3d 18; *390 W. End Assoc. v Harel*, 298 AD2d 11.) III. This action satisfies CPLR 901 (a)'s five requirements for class certification. (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481; *Roberts v Tishman Speyer Props., L.P.*, 62 AD3d 71, 13 NY3d 270; *SAP V/ATLAS 845 WEA Assoc. NF LLC v Jannelli*, 30 Misc 3d 75; *Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420; *City of New York v Maul*, 14 NY3d 499; *Dabrowski v Abax Inc.*, 84 AD3d 633; *Friar v Vanguard Holding Corp.*, 78 AD2d 83; *Gersten v 56 7th Ave. LLC*, 88 AD3d 189; *Adler v Ogden CAP Props., LLC*, 42 Misc 3d 613; *Charron v Wiener*, 731 F3d 241.) IV. Appellant's procedural arguments are groundless. (*Cohn v Goldman*, 76 NY 284; *P.T. Bank Cent. Asia v Chinese Am. Bank*, 229 AD2d 224; *Wilder v May Dept. Stores Co.*, 23 AD3d 646; *Ackerman v Price Waterhouse*, 252 AD2d 179; *Rebibo v Axton Owner LLC*, 2012 NY Slip Op 30109[U]; *Katz v NVF Co.*, 100 AD2d 470; *Surowitz v Hilton Hotels Corp.*, 383 US 363; *Advanced Magnetic Closures, Inc. v Rome Fastener Corp.*, 607 F3d 817; *Guzman v Mike's Pipe Yard*, 35 AD3d 266; *Tishman Constr. Corp. of N.Y. v City of New York*, 280 AD2d 374.)

*Pryor Cashman LLP*, New York City (*Todd E. Soloway, David C. Rose, Joshua D. Bernstein* and *Bryan T. Mohler* of counsel), and *Michael B. Kramer & Associates*, New York City (*Michael B. Kramer* of counsel), for appellants in the third above-entitled action. I. CPLR 901 (b) bars class actions to recover the statutory penalties imposed by Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (a). (*Sperry v Crompton Corp.*, 8 NY3d 204; *Mohassel v Fenwick*, 5 NY3d 44; *Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Riley v County of Broome*, 95 NY2d 455; *Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of N.Y.*, 14 AD3d 553; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382; *Bender v Jamaica Hosp.*, 40 NY2d 560; *Vallone v Delpark Equities*, 95 Misc 2d 161.) II. A class action plaintiff cannot waive a penalty imposed under the Rent Stabilization Law of 1969. (*Cox v Microsoft Corp.*, 8 AD3d 39; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11; *Asher v Abbott Labs.*, 290 AD2d 208; *Sperry v Crompton Corp.*, 8 NY3d 204; *Drucker v Mauro*, 30 AD3d 37; *Riverside Syndicate, Inc. v Munroe*, 39 AD3d 256, 10 NY3d 18; *Extell Belnord LLC v Uppman*, 113 AD3d 1; *390 W. End Assoc.*

*v Harel*, 298 AD2d 11; *Avon Bard Co. v Aquarian Found.*, 260 AD2d 207; *Jazilek v Abart Holdings LLC*, 10 NY3d 943.)

*Emery Celli Brinckerhoff & Abady LLP*, New York City (*Matthew D. Brinckerhoff* and *Hayley Horowitz* of counsel), and *Himmelstein McConnell Gribben Donoghue & Joseph*, New York City (*William Gribben, David Hershey-Webb* and *Ronald S. Languedoc* of counsel), for respondents in the third above-entitled action. I. Plaintiffs may forgo the class-wide pursuit of treble damages under Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (a). (*Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 103; *Amerelay, Inc. v Directomat, Inc.*, 7 AD2d 388; *Pierpoint v Hoyt*, 260 NY 26; *Mitchell v New York Hosp.*, 61 NY2d 208; *Matter of New York, Lackawanna & W. R.R. Co.*, 98 NY 447; *Lex 33 Assoc. v Grasso*, 283 AD2d 272; *Extell Belnord LLC v Uppman*, 113 AD3d 1; *Riverside Syndicate, Inc. v Munroe*, 10 NY3d 18; *Estro Chem. Co. v Falk*, 303 NY 83.) II. CPLR 901 (b) does not prohibit plaintiffs' class action. (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Sperry v Crompton Corp.*, 8 NY3d 204; *Cox v Microsoft Corp.*, 8 AD3d 39; *Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11; *Weinberg v Hertz Corp.*, 116 AD2d 1; *Krebs v Canyon Club, Inc.*, 22 Misc 3d 1125[A], 2009 NY Slip Op 50291[U]; *Lamarca v Great Atl. & Pac. Tea Co., Inc.*, 16 Misc 3d 1115[A], 2007 NY Slip Op 51424[U], 55 AD3d 487.) III. Allowing this action to proceed furthers the policies of Rent Stabilization Law of 1969 (Administrative Code of City of NY) § 26-516 (a) and CPLR article 9. (*Mohassel v Fenwick*, 5 NY3d 44; *Leider v Ralfe*, 387 F Supp 2d 283; *Brzychnalski v Unesco, Inc.*, 35 F Supp 2d 351; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14; *Liechtung v Tower Air*, 269 AD2d 363; *Sperry v Crompton Corp.*, 8 NY3d 204; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *72A Realty Assoc. v Lucas*, 101 AD3d 401; *Dugan v London Terrace Gardens, L.P.*, 34 Misc 3d 1240[A], 2011 NY Slip Op 52501[U], 101 AD3d 648; *Friar v Vanguard Holding Corp.*, 78 AD2d 83.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

We hold that CPLR 901 (b) permits otherwise qualified plaintiffs to utilize the class action mechanism to recover

compensatory overcharges under *Roberts v Tishman Speyer Props., L.P.* (13 NY3d 270 [2009]), even though Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY) § 26-516 does not specifically authorize class action recovery and imposes treble damages upon a finding of willful violation. We find the recovery of the base amount of rent overcharge to be actual, compensatory damages, not a penalty, within the meaning of CPLR 901 (b). We also do not believe it contravenes the letter or the spirit of the RSL or CPLR 901 (b) to permit tenants to waive treble damages in these circumstances—when done unilaterally and through counsel.

### Facts and Procedural History

In all three of these putative class actions, plaintiffs are current or former tenants of separate apartment buildings in New York City who seek damages for rent overcharges. They allege that their units were decontrolled in contravention of RSL § 26-516 (a) because their landlords accept tax benefits pursuant to New York City's J-51 tax abatement program (now Administrative Code of City of NY § 11-243). To qualify for the J-51 program exemption, landlords must relinquish their rights under the decontrol provisions of the RSL while they benefit from the exemption.

Plaintiffs' claims arose out of this Court's decision in *Roberts*, where we held that a landlord receiving the benefit of a J-51 tax abatement may not deregulate any apartment in the building pursuant to the luxury decontrol laws (13 NY3d at 286). Prior to *Roberts*, the New York State Division of Housing and Community Renewal (DHCR) took the position that where participation in the J-51 program was not the sole reason for the rent-regulated status of a building, particular apartments could be luxury decontrolled. As a consequence, many landlords decontrolled particular apartments in their buildings, charging tenants market rents, while at the same time receiving J-51 tax abatements. In *Roberts*, we did not address the legitimacy of the putative class action, but we now address the issue.

All plaintiffs initially sought treble damages in their complaints, but then waived that demand through attorney affirmation. Because of the number of plaintiffs from each building who seek damages for rent overcharges, the question arises whether these claims can properly be brought as class actions.

The *Borden* defendant appeals from a unanimous Appellate Division order affirming a Supreme Court grant of plaintiff's

motion for class certification (*Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d 630 [1st Dept 2013]). The Supreme Court held that CPLR 901 (b) permits waiver of penalties and "allow[s] the claims for compensatory damages only to continue" (*Borden v 400 E. 55th St. Assoc. L.P.*, 34 Misc 3d 1202[A], 2011 NY Slip Op 52322[U], *5 [Sup Ct, NY County 2011]). The court found that treble damages are not mandatory because the "trebling penalty is not available where a landlord can prove that the overcharge was not willful," and "the post *Roberts* jurisprudence has rejected the trebling of damages . . . because the market rents were charged in accordance with DHCR rules and regulations" (*id.*). Further, any class member wanting to seek treble damages would be able to opt out of the class to protect his or her interests (2011 NY Slip Op 52322[U], *4). The Appellate Division agreed, concluding that plaintiff properly waived treble damages under RSL § 26-516 (a), and the waiver permitted her to bring her claims as a class action under CPLR 901 (b) (*Borden*, 105 AD3d 630 [1st Dept 2013]).

In *Gudz*, defendant appeals an Appellate Division order affirming, by a 3-2 vote, the Supreme Court grant of class certification (*Gudz v Jemrock Realty Co., LLC*, 105 AD3d 625 [1st Dept 2013]). As the record in *Gudz* indicates, Supreme Court also rejected the argument that the RSL mandates treble damages, remarking that "[c]ourts have consistently held that plaintiffs may waive the penalty portion of a statute that would otherwise render the action ineligible for class certification." The Appellate Division majority concluded the same, finding that waiver of the treble damages provision does not violate CPLR 901 (b) or the RSL because CPLR 901 (b) allows waiver of a penalty, and the RSL does not mandate treble damages (*see Gudz*, 105 AD3d at 625-626). Because "treble damages are not the sole measure of recovery" and a landlord may overcome the presumption of willfulness, the penalty was not mandatory and plaintiff's claim for overcharges and interest did not fall within the definition of a penalty under CPLR 901 (b) (*id.* at 625-626). "[E]ven though such recovery is denominated a penalty by the RSL," it is not a penalty "because [claims for overcharges and interest] lack a punitive, deterrent and litigation-incentivizing purpose and are, in fact, compensatory" (*id.* at 626 [citation omitted]). The dissenting Justices contended that plaintiff's waiver of the treble damages remedy "circumvent[ed] the clear intent of CPLR 901 (b), which is to preclude the maintenance of a class action suit seeking a penalty" (*id.* at 627). Conceding

that plaintiff's request for the first third (the base amount) of the treble damages award was compensatory, the dissenters maintained, however, that the RSL mandated the imposition of treble damages pursuant to the presumption that an overcharge is willful and asserted that any waiver of the RSL's provisions was void (*id.* at 627-628). They also disputed the protection that an opt-out clause would provide, contending that members may be bound by a waiver they did not make and be unable to take advantage of all the remedies available to them (*id.* at 629).

The *Downing* defendants appeal an Appellate Division order reversing the Supreme Court dismissal of plaintiffs' complaint. In granting defendants' motion to dismiss, Supreme Court asserted that CPLR 901 (b) prohibited class actions for claims seeking penalties, and the RSL forbade waiver of treble damages. In reversing and reinstating the complaint, the Appellate Division majority held that the class action could be brought under CPLR 901 (b) because plaintiffs waived treble damages and "even where a statute creates or imposes a penalty, the restriction of CPLR 901 (b) is inapplicable where the class representative seeks to recover only actual damages and waives the penalty on behalf of the class" provided that class members have the opportunity to opt out of the class to seek punitive damages (*Downing v First Lenox Terrace Assoc.*, 107 AD3d 86, 89 [1st Dept 2013]). The court also concluded that a unilateral waiver complies with the Rent Stabilization Code's prohibition of any *agreement* to waive its provisions (*see id.* at 89-90). The majority remanded for further proceedings to evaluate whether the allegations satisfy factors for class certification under CPLR 901 (a).

In each case, the Appellate Division certified a question to this Court.

Discussion

Rent Stabilization Law § 26-516 (a) states, in relevant part, that any landlord "found . . . to have collected an overcharge above the rent authorized for a housing accommodation . . . shall be liable to the tenant for a penalty equal to three times the amount of such overcharge" but "[i]f the owner establishes by a preponderance of the evidence that the overcharge was not willful, the state division of housing and community renewal shall establish the penalty as the amount of the overcharge plus interest" (RSL § 26-516 [a]). It provides that "[i]n no event shall such treble damage penalty be assessed against an owner

based solely on said owner's failure to file a timely or proper initial or annual rent registration statement" (RSL § 26-516 [a]). Further, "no determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed" and "[n]o penalty of three times the overcharge may be based upon an overcharge having occurred more than two years before the complaint is filed" (RSL § 26-516 [a] [2]).

CPLR 901 (b) prohibits any claim for penalties to be brought as a class action. It states, "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action" (CPLR 901 [b]). The language of CPLR 901 (b) itself says it is not dispositive that a statute imposes a penalty so long as the action brought pursuant to that statute does not seek to recover the penalty.

This view is bolstered by the legislative history of CPLR 901 (b), which provides that the statute requires a liberal reading and allows class-action recovery of actual damages despite a statute's additional provision of treble damages (Sponsor's Mem, Bill Jacket, L 1975, ch 207). Assemblyman Fink, the bill's sponsor, explained the purpose of CPLR 901 (b), stating that "[t]he bill . . . precludes a class action based on a statute creating or imposing a penalty . . . unless the specific statute allows for a class action," but "[a] statutory class action for *actual damages* would still be permissible" (Sponsor's Mem at 2, Bill Jacket, L 1975, ch 207 [emphasis added]). In other words, "if the members of a class who would be entitled to a penalty sue only for their actual damages, they may do so in a class action" (Mem of St Consumer Protection Bd at 4, Bill Jacket, L 1975, ch 207). Waiver does not circumvent CPLR 901 (b); on the contrary, the drafters not only foresaw but intended to enable plaintiffs to waive penalties to recover through a class action. Citing this Court's decision in *Moore v Metropolitan Life Ins. Co.* (33 NY2d 304, 313 [1973]), in which we commended the legislature for its "comprehensive proposal to provide a broadened scope and a more liberal procedure for class actions," the legislature intended for CPLR 901 (b) to be interpreted liberally, and be a stark contrast from the former statute "which fail[ed] to accommodate pressing needs for an effective, flexible and balanced

group remedy" (Sponsor's Mem at 1, Bill Jacket, L 1975, ch 207; *see also City of New York v Maul*, 14 NY3d 499, 509 [2010] [requiring liberal interpretation of class action statute]).

■ The legislature paid particular attention to the Bankers Association and Empire State Chamber of Commerce when devising CPLR 901 (b) and their fear that plaintiffs would receive penalties far above their "actual damages sustained" (Mem of Empire St Chamber of Commerce at 3-4, Bill Jacket, L 1975, ch 207; *see* Mem of NY St Bankers Assn, Bill Jacket, L 1975, ch 207). The legislature added CPLR 901 (b) specifically to address this fear, intending to limit class actions to actual damages. It is abundantly clear that plaintiffs seek a refund, i.e. actual damages, which CPLR 901 (b) did not intend to bar.

From a policy standpoint, permitting plaintiffs to bring these claims as a class accomplishes the purpose of CPLR 901 (b). Preemptively responding to the argument raised by defendants here, the State Consumer Protection Board emphasized the importance of class actions:

> "The class action device responds to the problem of inadequate information as well as to the need for economies of scale" for "a person contemplating illegal action will not be able to rely on the fact that most people will be unaware of their rights—if even one typical person files a class action, the suit will go forward and the other members of the class will be notified of the action either during the proceedings or after a judgment is rendered in their favor" (Mem of St Consumer Protection Bd at 1, Bill Jacket, L 1975, ch 207).

Where a statute imposes a nonmandatory penalty, plaintiffs may waive the penalty in order to bring the claim as a class action—such as was the case for consumer fraud actions brought under section 349 (h)[1] of the General Business Law in the case of *Cox v Microsoft Corp.* (8 AD3d 39 [1st Dept 2004]; *see also*

---

**1.** General Business Law § 349 makes deceptive acts and practices unlawful, stating that

> "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or

*Ridge Meadows Homeowners' Assn. v Tara Dev. Co.*, 242 AD2d 947 [4th Dept 1997]; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 606 [2d Dept 1987]). Although the statute prescribed $50 minimum damages to be awarded for a violation, the plaintiffs only sought actual damages, rendering CPLR 901 (b) inapplicable. Although CPLR 901 (b) intended to restrict the types of cases that could be brought as class actions, in our cases the CPLR is not contravened by allowing waiver because plaintiffs will not receive a windfall. They will only receive compensatory damages in the form of a refund of rent overcharges. In addition to prohibiting treble damages where the landlord disproves willfulness, the RSL carves out other instances where treble damages may not be applied, such as for rent registration filing errors (RSL § 26-516 [a]).

Defendants compare the language of the RSL to other statutes to support their contention that waiver is unavailable because the RSL mandates the assessment of treble damages. They contend that unless the landlord proves the overcharges were not willful, treble damages must be assessed, and this lack of discretion implies that no party may waive treble damages. However, the RSL's treble damages are only applied where defendant fails to disprove willfulness under the low standard of preponderance of the evidence in contrast to a statute like General Business Law § 340 (5),[2] where treble damages are the sole measure of recovery available to a private party and are awarded upon a finding of liability alone. Notably, in another Appellate Division case, a plaintiff in a General Business Law § 340 (5) case could not waive the treble damages provision to be certified as a class, the court saying "[treble damages] are mandatory, i.e., not discretionary or contingent upon a finding of bad faith" (*Asher v Abbott Labs.*, 290 AD2d 208, 209 [1st Dept 2002]; *see also Sperry v Crompton Corp.*, 8 NY3d 204, 213 [2007] [finding treble damages under General Business Law § 340 (5) to be a penalty within the meaning of CPLR 901 (b) but not addressing waiver]).

While RSL § 26-516 designates both the rent overcharge and treble damages as "penalties," the Administrative Code and the

---

knowingly violated this section" (General Business Law § 349 [h]).

**2.** General Business Law § 340 (5) prohibits monopolies and states that "any person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys' fees."

DHCR simultaneously refer to the rent overcharge as an "overcharge award" (RSL § 26-516 [a] [2]; DHCR Policy Statement 95-1 [Dec. 6, 1995]) and a "refund payment" (Administrative Code of City of NY § 26-413 [referring to rent control as opposed to rent stabilization]). The RSL also clearly distinguishes between the compensatory "award" for which a four-year statute of limitations applies and the "penalty of three times the overcharge" for which a two-year statute of limitations applies (RSL § 26-516 [a] [2]). A plaintiff bringing an overcharge claim outside the two-year statute of limitations window would be prohibited from recovering treble damages, but could still recover actual damages.

Regardless of the nomenclature, even if the Administrative Code and Policy Statement had consistently called the compensatory overcharge a penalty, the Administrative Code's terminology alone would not be dispositive. Judge Cardozo eruditely observed that although a statute spoke of a payment due "as a penalty," it is only so "in a loose sense" and "[f]orms and phrases of this kind, accurate enough for rough identification or convenient description, do not carry us very far" in determining the statutory meaning (*Cox v Lykes Bros.*, 237 NY 376, 380 [1924]). Continuing, he cautioned us "to remember that the same provision may be penal as to the offender and remedial as to the sufferer" and "[t]he nature of the problem will determine whether we are to take one viewpoint or the other" (*id.* at 380). As Judge Cardozo alluded, the word penalty does have a specific definition that does not apply to actual damages. "[A] statute imposes a penalty when the amount of damages that may be exacted from the defendant would exceed the injured party's actual damages" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C901:11 at 104 [2006 ed]).

This Court signaled that the "determination of whether a certain provision constitutes a penalty may vary depending on the context" (*Sperry*, 8 NY3d at 213). In *Sperry*, where we found the treble damages provision of General Business Law § 340 (5) constituted a penalty, we also found that "one third of the award unquestionably compensates a plaintiff for actual damages" while "the remainder necessarily punishes . . . violations, deters such behavior (the traditional purposes of penalties) or encourages plaintiffs to commence litigation" (*Sperry*, 8 NY3d at 214). We disallowed class action recovery in *Sperry*, but the plaintiff plainly sought treble damages, refusing to waive the

penalty (*id.* at 215). Plaintiffs here seek that first third of the treble damages award, which we have determined is a compensatory form of relief.

This Court has already found the same provision of the RSL to provide compensatory forms of relief—the provision serves to make the tenant whole, in addition to granting a separate punitive award of treble damages. As we stated in *Mohassel v Fenwick*, the provisions of RSL § 26-516 (a), which "establish the penalty as the amount of the overcharge plus interest . . . are designed . . . *to compensate the tenant*" (5 NY3d 44, 50 [2005] [emphasis added]). There, we held that "[t]he imposition of prejudgment interest ensures that injured tenants will be made whole" (*Fenwick*, 5 NY3d at 51). Reading the interest provision as punitive would be "inconsistent with the purpose of overcharge proceedings to fully compensate tenants when owners fail to comply with rent stabilization requirements" (*Fenwick*, 5 NY3d at 51). We emphasized that the award refunded the tenant since the landlord "had the use of the tenant's money . . . while the tenant was deprived of it" (*Fenwick*, 5 NY3d at 52). The same circumstance arises here where the landlord overcharges a tenant, holds that money for a time, and then must pay it back. When a store overcharges a customer who later brings in the receipt seeking a refund of the overcharge, no one could argue that repayment penalizes the store—the money always belonged to the customer. As we found in *Fenwick*, we find here that the first third of the treble damages award merely compensates the tenant and CPLR 901 (b) does not apply to such a nonpunitive claim.

It is ironic that landlords here argue that tenants *must* bring multiple actions for the greatest (treble) damages. They also cite the State's long history of protecting tenants' rights when arguing that waiver contravenes the purpose of the RSL.

Defendants alternatively argue that even if treble damages are not mandatory, tenants' waiver of the provision contravenes the language and intent of section 2520.13 of the Rent Stabilization Code, which prohibits an agreement waiving any provisions of the RSL (9 NYCRR 2520.13). But tenants may waive a provision unilaterally (not through an agreement with the landlord), and still comply with the letter and the spirit of the law. The Rent Stabilization Code says as much when it allows tenants to withdraw claims through a negotiated settlement, or with the approval of the DHCR or a court, or where the tenant is represented by counsel (9 NYCRR 2520.13). Where courts have

denied a tenant's waiver, the evidence demonstrated that the landlord and tenant were either colluding to deregulate apartments or that the tenants were being manipulated by contracts of adhesion (see *Drucker v Mauro*, 30 AD3d 37, 39 [1st Dept 2006]).

Here, there is no evidence that tenants are being coerced to waive the treble damages provision or that there is any collusion between the landlords and the tenants. The tenants by themselves, and in opposition to the landlords' wishes, are opting to waive treble damages because they believe they will be more protected through a class action that finds that deregulation was illegal and gives them compensation for the overcharges. This protects tenants and preserves rent regulation, fulfilling the most significant purpose of the RSL. The tenants' waiver here is unilateral, supported by court order, and made with representation by counsel.

As the lower courts noted, treble damages would be unavailable to the tenants because a finding of willfulness is generally not applicable to cases arising in the aftermath of *Roberts*. For *Roberts* cases, defendants followed the Division of Housing and Community Renewal's own guidance when deregulating the units, so there is little possibility of a finding of willfulness (*Borden*, 34 Misc 3d 1202[A], 2011 NY Slip Op 52322[U] [Sup Ct, NY County 2011]). Only after the *Roberts* decision did the DHCR's guidance become invalid.

Although the dissenters in *Roberts* predicted numerous cases would arise out of the *Roberts* decision, the ubiquity of the wrong must be addressed, and that their foresight has proved correct supports class certification for reasons of judicial economy.

▇ As to the question of whether the putative classes meet the standards for class certification, the nature of CPLR 901 (a) places determination of those factors "within the sound discretion of the trial court" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52-53 [1999]) and "reviewable by us only for an abuse of discretion" (*Corsello v Verizon N.Y., Inc.*, 18 NY3d 777, 791 [2012], *rearg denied* 19 NY3d 937 [2012]; *City of New York v Maul*, 14 NY3d 499, 509 [2010]). In *Borden* and *Gudz*, the courts below thoroughly evaluated the five prerequisites that CPLR 901 (a) requires to be satisfied before a class may be certified, and thus the Appellate Division did not abuse its discretion in affirming those determinations. The prerequisites are:

"(1) the class is so numerous that joinder of all members . . . is impracticable;

"(2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"(3) the claims or defenses of the representative parties are typical . . . of the class;

"(4) the representative parties will fairly and adequately protect the interests of the class; and

"(5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (*see* CPLR 901 [a]).

As to the first factor, numerosity, the legislature contemplated classes involving as few as 18 members (Mem of St Consumer Protection Bd at 8 n 11, Bill Jacket, L 1975, ch 207) where the members would have difficulty communicating with each other, such as where "barriers of distance, cost, language, income, education or lack of information prevent those who are aware of their rights from communicating with others similarly situated" (Mem of St Consumer Protection Bd at 3, Bill Jacket, L 1975, ch 207). Such reasoning would apply to the cases here, where tenants have moved out of the building. In these cases, the classes range in size from 53 to over 500 members, well above the numerosity threshold contemplated by the legislature and approved by courts (*Consolidated Rail Corp. v Town of Hyde Park*, 47 F3d 473, 483 [2d Cir 1995] ["numerosity is presumed at a level of 40 members"]).

As to predominance and typicality, the predominant legal question involves one that applies to the entire class—whether the apartments were unlawfully deregulated pursuant to the *Roberts* decision (*Borden*, 105 AD3d at 631). It should be noted that the legislature enacted CPLR 901 (a) with a specific allowance for class actions in cases where damages differed among the plaintiffs, stating "the amount of damages suffered by each class member typically varies from individual to individual, but that fact will not prevent the suit from going forward as a class action if the important legal or factual issues involving liability are common to the class" (Mem of St Consumer Protection Bd at 3, Bill Jacket, L 1975, ch 207).

The courts' evaluation of the adequacy of each representative was more than sufficient. Having found no substantiated

conflicts between the tenants and a representative with "adequate understanding of the case," and competent attorneys (*Borden*, 105 AD3d at 631), we conclude that allowing tenants to opt out of the class avoids any question of the adequacy of the class representation pursuant to CPLR 901 (a) (*Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11, 12 [1st Dept 1998]). Finally, to preserve judicial resources, class certification is superior to having these claims adjudicated individually.

In conclusion, maintaining the actions as class actions does not contravene the letter or the spirit of the CPLR or Rent Stabilization Law. Accordingly, in each case, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

SMITH, J. (dissenting). Defendants argue that these are actions "to recover a penalty" because the treble damages remedy in Rent Stabilization Law of 1969 (RSL) (Administrative Code of City of NY) § 26-516 (a) is not waivable; because even if it were waivable under the statute that authorizes it, Rent Stabilization Code (9 NYCRR) § 2520.13 prohibits a waiver; and because in any event, even without trebling, the remedy provided by RSL § 26-516 (a) is a penalty. None of these arguments is without merit, but I will not stop to consider the first two, because I am satisfied that the third is correct. An action under RSL § 26-516 (a) to recover a rent overcharge, whether trebled or not, is "an action to recover a penalty . . . created or imposed by statute" and therefore "may not be maintained as a class action" (CPLR 901 [b]). (It is not disputed that the RSL, though technically a chapter of the Administrative Code of City of NY [tit 26, ch 4], is a "statute" within the meaning of the CPLR provision.)

The simplest and best reason to hold that even the untrebled remedy is a penalty is that the statute says it is. Section 26-516 (a) says:

> "Subject to the conditions and limitations of this subdivision, any owner of housing accommodations who . . . is found . . . to have collected an overcharge above the rent authorized for a housing accommodation subject to this chapter shall be liable to the tenant for a penalty equal to three times the amount of such overcharge. . . . If the owner establishes by a preponderance of the evidence that the overcharge was not willful, the state division of

housing and community renewal shall establish *the penalty as the amount of the overcharge plus interest*" (emphasis added).

It could hardly be said more plainly that the authors of the RSL considered "the amount of the overcharge plus interest"—without trebling—to be a "penalty."

Our cases make clear that, in deciding whether a particular remedy is a penalty or not, the label chosen by the authors of the legislation in question is ordinarily dispositive. "[T]his Court has stated that, where a statute expressly denominates an enhanced damages provision to be compensatory in nature, it will not be deemed a penalty" (*Sperry v Crompton Corp.*, 8 NY3d 204, 212-213 [2007] [citing cases]). The reverse should also be true; where the statute says a remedy is a penalty, it is one. At least, we would not be justified in rejecting the legislative label unless it were plain that it is a misnomer—that the single overcharge remedy, though called a penalty, is in fact a purely compensatory remedy. Here, there is ample justification for the legislative choice to call this remedy a penalty.

While of course single-damages remedies are usually compensatory, the remedy provided by this RSL provision is unusual, because it awards monetary relief to people who have not, in economic reality, been damaged by the landlord misconduct of which they complain. In fact, these plaintiffs and others similarly situated are in a real sense beneficiaries of that misconduct. Where, as here, a landlord illegally charges a free-market rent for a rent-stabilized apartment, the result is that the apartment will be rented to someone able and willing to pay the market rent. If the landlord had complied with the law, the apartment would have been more affordable and many more tenants would have been happy to rent it—assuming that it had become vacant at all. It is most unlikely that any of the present plaintiffs, all of whom signed market-rent leases for their apartments, could have obtained the same apartments at the legal rent. But the statute, by requiring the overcharge to be refunded to them, effectively gives them what they could not have obtained; they are getting not compensation, but a significant windfall.

I am not criticizing the legislative choice to give this windfall to these plaintiffs. The choice makes sense—but only if the statute is seen not as compensating injured tenants, but as penalizing landlords. By being deprived of the money they have illegally received, the landlords are punished for their unlawful

conduct (though, because the misconduct was not wilful, the punishment is only one third as severe as it would otherwise be) and they and other landlords are deterred from future violations of the law. The result of this penalty, in the legislative scheme, is that landlords will be induced to comply with the rent limitations imposed by law and people who—unlike the present plaintiffs—cannot pay market rents will be able to find affordable housing.

I therefore conclude that the authors of RSL § 26-516 (a) had, at least, a reasonable basis for calling the untrebled remedy that plaintiffs here are seeking a "penalty." Because it is a penalty, it may not be recovered in a class action.

In *Borden v 400 E. 55th St. Assoc.*: Order affirmed, with costs, and certified question answered in the affirmative.

Opinion by Chief Judge LIPPMAN. Judges GRAFFEO and RIVERA concur; Judge READ concurs in result for reasons stated in the memorandum at the Appellate Division (105 AD3d 630 [2013]); Judge SMITH dissents in an opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM taking no part.

In *Gudz v Jemrock Realty Co., LLC*: Order affirmed, with costs, and certified question answered in the affirmative.

Opinion by Chief Judge LIPPMAN. Judges GRAFFEO and RIVERA concur; Judge READ concurs in result for reasons stated in the memorandum at the Appellate Division (105 AD3d 625 [2013]); Judge SMITH dissents in an opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM taking no part.

In *Downing v First Lenox Terrace Assoc.*: Order affirmed, with costs, and certified question answered in the affirmative.

Opinion by Chief Judge LIPPMAN. Judges GRAFFEO and RIVERA concur; Judge READ concurs in result for reasons stated by Justice Richard T. Andrias at the Appellate Division (107 AD3d 86 [2013]); Judge SMITH dissents in an opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM taking no part.